# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Jeremy Williams, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.    08 C 1657 |
| | ) | |
| Chicago Police Officer Matthew Peterson, | ) | Judge Shadur |
| Chicago Police Officer Oscar Serrano, | ) | |
| Chicago Police Officer Paul Sandoval, | ) | Magistrate Judge Mason |
| Unknown Chicago Police Officers, | ) | |
| and, the City of Chicago, a municipal | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

NOW COMES the plaintiff Jeremy Williams ("plaintiff"), by and through his attorneys, Loftus and Saltzberg, P.C. and Steven H. Fine, complaining of the defendants Matthew Peterson, Oscar Serrano and Paul Sandoval (collectively, the "officer defendants"), Unknown Chicago Police Officers and the City of Chicago, a municipal corporation, as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction is invoked pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, Title 42, U.S.C. §§1983 and 2000e. Supplemental jurisdiction arises pursuant to 28 U.S.C. §§1331 and 1343(a).

2.    Venue is proper, pursuant to 28 U.S.C. §1391 in as much as the defendants reside or are located in the Northern District of Illinois and the plaintiff resides in the Northern District of Illinois, and all of the acts and damages complained of herein occurred in the Northern District of Illinois.

## PARTIES

3.     Plaintiff Jeremy Williams is a citizen of the United States and a resident of the State of Illinois.

4.     Defendants Matthew Peterson, Oscar Serrano, Paul Sandoval and other Unknown Chicago Police Officers were, at all relevant times, employed by the City of Chicago as sworn police officers.  On information and belief, at the time of the occurrence, Officer Matthew Peterson was the son of a Chicago Police Detective Commander in Area Four. All of the officer defendants and the other Unknown Chicago Police Officers are sued in their individual capacities.

5.     Defendant CITY OF CHICAGO is a municipal corporation of the State of Illinois and is and was, at all relevant times, the employer of the officer defendants and the Unknown Chicago Police Officers. The City of Chicago maintains, manages and/or operates the Chicago Police Department.

## FACTS COMMON TO ALL COUNTS

6.     Near midnight, on December 20, 2007, plaintiff Williams was seated in the passenger seat of a parked vehicle at approximately 2900 W. Flournoy in the City of Chicago, County of Cook, State of Illinois.   Some pedestrians were standing around the vehicle talking to the plaintiff.

7.     Without warning, an unmarked Chicago Police vehicle came to a stop in front of and facing plaintiff's vehicle, blocking in the vehicle. The three officer defendants quickly exited the vehicle, including an officer from the back seat of the police vehicle.

8.    Rather than approaching plaintiff's vehicle from the rear, the officer defendants approached the front of plaintiff's parked vehicle, with guns drawn and at the ready low position.

9.    Immediately upon seeing the police activity, plaintiff put his hands up over his head as did the driver of the parked vehicle.  Neither plaintiff nor the driver posed any threat to the officer defendants.

10.    Chicago Police Officer Peterson, who had exited from the back seat of the police vehicle, ran to the front of plaintiff's vehicle and immediately began shooting into the parked car, without cause.

11.    While seated in the passenger seat of the car, plaintiff quickly sustained a bullet wound to the underside of his right forearm as his arms were up over his head.

12.    Chicago Police Officer Peterson continued to fire into plaintiff's parked car.  Plaintiff sustained a second bullet wound to the head, through the right eye and brain which exited the right side of his skull.

13.    The driver of the vehicle, fearing for their lives, quickly put the car in reverse to get away from the bullets, but Officer Peterson continued to fire into the moving vehicle, apparently without regard for bystanders.  On information and belief, Officer Peterson fired at least six times into the vehicle.

14.    While doubled over in the passenger seat, plaintiff was grazed by yet a third bullet.

15.    Neither Officer Serrano nor Officer Sandoval took any steps to stop Officer Peterson from firing his service revolver into the parked vehicle.

16.    Neither Officer Serrano nor Officer Sandoval took any steps to stop Officer Peterson from firing his service revolver into the moving vehicle.

17.    On information and belief, before leaving the scene, the officer defendants verbally argued with each other on the street where the shooting took place.  Then, the officer defendants got into their police vehicle and set off in a different direction than plaintiff's vehicle had followed.

18.    The officer defendants did not remain on the scene, as required by Chicago Police General Orders, following the discharge of Officer Peterson's weapon.

19.    Plaintiff Williams received serious physical injuries but survived the attack.  He endured several days in a coma as a result of the bullet he sustained to his brain.  Plaintiff Williams had to undergo surgery to remove his right eye and to rebuild his facial bones and sinus cavities.  The nerve over his right eye was severed and he is now severely disfigured. He will require surgery to restore movement to his right eyelid. The bullet in his right forearm remains and has caused and will cause severe swelling and pain.  Ultimately it will have to be surgically removed.  Plaintiff Williams is also scared on his forehead, temple, arm and back.  He continues to need ongoing medical attention and will require such attention for the foreseeable future.

20.    Despite several attempts by the Chicago Police Department to induce the Cook County State's Attorney to bring charges against plaintiff, the Cook County State's Attorney has refused all charges and, on information and belief, will not charge plaintiff with any wrongdoing arising out of the incident.

21.    The City of Chicago has not sought charges against Officer Peterson for discharging his weapon without justification.

22.    After the incident, several Unknown Chicago Police Officers engaged in a deliberate campaign to illegally harass plaintiff and to cover up the officer defendants' conduct by attempting to fabricate a criminal charge against plaintiff and by conducting a sham investigation of the incident.  It should be noted that the incident took place in Chicago Police Area Four where Officer Peterson's father was the Detective Division Commander.

23.    Some examples of the Unknown Chicago Police Officers' improper conduct includes: while plaintiff Williams lay near death in the hospital, Unknown Chicago Police officers blocked his hospital door, refusing entry to any visitors, *including* plaintiff's mother, for nearly ten hours after the shooting. Unknown Chicago Police Officers falsely told plaintiff's mother that there was a Chicago Police rule prohibiting anyone from visiting gun shot victims.

24.    Furthermore, during the time that the Unknown Chicago Police Officers forced plaintiff's mother and family to wait outside of plaintiff's hospital room, where the family had to endure separation from plaintiff as he lay in a coma and near death, plaintiff's mother and family watched as at least six Unknown Chicago Police Officers entered and exited plaintiff's hospital room.  In fact, while keeping plaintiff's mother away from her son, Unknown Chicago Police Officers administered a gunshot residue test to the unconscious plaintiff, without the benefit of a warrant and despite the fact that he was not under arrest.

25.    The Chicago Police misconduct continued as Unknown Chicago Police Officers, still keeping plaintiff's mother from his room, knowingly and with reckless disregard for the truth, falsely told plaintiff's mother that her son had been shot between

the eyes, not by Officer Peterson, but by the driver of the vehicle. Unknown Chicago Police Officers also falsely told plaintiff's mother that the driver of the vehicle had shot her son and then maliciously pushed him out of the vehicle onto the street.

26.    Unknown Chicago Police Officers also lied to plaintiff's mother and family when they told them that plaintiff was under arrest and that that was why there were police guarding his hospital room and blocking anyone from entering.

27.    Unknown Chicago Police Officers even demanded that plaintiff's doctors draw blood from plaintiff and give it to the police, without the benefit of a warrant or permission from the Williams family. Fortunately, the doctors refused. However, before allowing plaintiff's mother into the ICU to see her son, again without benefit of a warrant or arrest, two Unknown Chicago Police Officers removed all of plaintiff's possessions from his hospital room, including: his clothes, his underwear, his wallet, his watch, his new boots, his coat, his hat and his cellular telephone. They have not yet been returned. Weeks later, when plaintiff attempted to get another telephone utilizing his cellular number, his cellular carrier informed him that his number was not available because it was "under investigation" and could not be used again. The Chicago Police have taken plaintiff's personal possessions and phone number without justification or warrant.

28.    On yet another occasion, within days of plaintiff's release from the hospital, but long after the Cook County State's Attorney refused to bring charges against plaintiff, Chicago Police Detectives Heerdt and Francis (not yet named as defendants), came to plaintiff's home and demanded that plaintiff leave his sick bed to speak with them. When plaintiff's mother protested and explained that plaintiff was too ill to leave his bed, the Chicago Police officers told her that they demanded to speak with him so that

they could determine "what charges they would bring against him." The officers made such a statement to plaintiff and his mother, knowing that charges had already been declined.

29.     On December 21, 2007, just one day after the shooting, ADS Ernest T. Brown (not yet named as a defendant), conducted what the Chicago Police termed an initial investigation of the shooting incident. However, the report was little more than a verbatim retelling of the officer defendants' inaccurate version of the facts. The report contained very limited police investigative work and was fraught with obvious inaccuracies, including fabrications.

30.     Also as a result of the shooting, plaintiff sustained severe emotional injuries including, but not limited to: fear of additional attack, fear of retaliation by the defendants, fear of other members of the Chicago Police Department, fear of strangers, humiliation, and other emotional injuries.

31.     As of today's date, the City of Chicago has not taken any action against any of the officer defendants.

### COUNT I – 42 U.S.C. §1983

**EXCESSIVE AND DEADLY FORCE/DUE PROCESS**
***MONELL* CLAIM**
**(Officer Peterson and the City of Chicago)**

32.     Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

33.     As described in the preceding paragraphs, Officer Peterson's use of deadly force, acting under color of law and within the scope of his employment, constituted excessive force in violation of plaintiff's Constitutional rights.

34.    At the time Officer Peterson used deadly force, there was not any threat of death or serious bodily harm to anyone but plaintiff and the driver of his vehicle.

35.    Officer Peterson's conduct was objectively unreasonable and was undertaken intentionally, with willful indifference to plaintiff's constitutional rights.

36.    Officer Peterson's conduct constituted the use of excessive and deadly force without cause or justification in violation of plaintiff's Fourth Amendment rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by the Fourteenth Amendment.

37.    At all relevant times, the City of Chicago and the Chicago Police Department wrongly maintained, operated, condoned, and/or permitted a number of illegal and/or unconstitutional policies and practices, that facilitated the conduct at issue in this Count, in that:

   a.    As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

   b.    As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their use of deadly force will rarely be adequately scrutinized and, in

that way, directly encouraging future abusive uses of deadly force such as those affecting plaintiff;

c. Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d. City policymakers were deliberately indifferent to the series of bad acts by Chicago Police Officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of its officers;

e. During the relevant time, the Chicago Police Department had one or more of the following customs or policies: 1) stopping, detaining, arresting and searching civilians without a warrant, probable cause, reasonable suspicion, consent, or other legal basis; 2) searching civilians' homes and property without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis; 3) arbitrary use of deadly and excessive force against arrestees, detainees and other civilians; 4) denial of substantive due process, abuse of legal process, malicious prosecution and filing of false charges against innocent persons; 5) assault of arrestees, detainees and other civilians; 6) preparing false and incomplete police reports to cover up police

misconduct including unconstitutional searches and seizures; 7) false denial that an incident of police officer misconduct took place; 8) a code of silence in which police officers fail to report police misconduct including the type of misconduct alleged by plaintiff in this Complaint; 9) a code of silence in which police officers either remain silent or give false and misleading information during official investigations to cover up misconduct and protect themselves and other police officers; 10) failure to adequately investigate citizen complaints against police officers for the type of misconduct alleged by plaintiff in this Complaint; 11) failure to adequately discipline police officers for the type of misconduct alleged by plaintiff in this Complaint such that the City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred; 12) conducting inherently deficient investigations of complaints of police misconduct in which an officer receives meaningful discipline in only a miniscule percentage of cases, thereby encouraging more police misconduct; 13) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 14) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 15) a custom of failing to properly supervise officers engaged in wrongful conduct; 16)

failure to adequately train and supervise police officers to rectify the malfeasance described , above;

f.  Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

g.  The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

h.  The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

38.  Officer Peterson's actions, as alleged in this Complaint, were done pursuant to, and as a result of, one or more of the above *de facto* practices, policies and customs of the City of Chicago.

39.  The practices, policies and customs described above are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

40.  As a direct and proximate result of the City of Chicago and Officer Peterson's intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiff has and will suffer lost wages, benefits and entitlements, damage to career and reputation, pain, suffering, and humiliation and severe emotional distress and

has been deprived of certain rights and privileges as a citizen of the United States all in violation of 42 U.S.C. §1983.

WHEREFORE, plaintiff Williams prays that the Court enter judgment in his favor and against defendants City of Chicago and Officer Peterson, awarding compensatory damages and attorneys' fees, along with punitive damages against Officer Peterson, and any other relief this Court deems appropriate.

### COUNT II – 42 U.S.C. §1983

**EXCESSIVE AND DEADLY FORCE/DUE PROCESS**
***MONELL* CLAIM**
**(Officers Sandoval and Serrano and the City of Chicago)**

41.     Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

42.     Officers Sandoval and Serrano, acting under color of law and within the scope of their employment, stood by and failed to intervene while Officer Peterson fired several times into plaintiff's parked vehicle.

43.     Officers Sandoval and Serrano, acting under color of law and within the scope of their employment, stood by and failed to intervene while Officer Peterson fired several more times into plaintiff's moving vehicle.

44.     Officers Sandoval and Serrano were present for the physical abuse of plaintiff, had a duty to act and each had the opportunity, but failed to intervene, to prevent the abuse.

45.     By reason of Officer Serrano and Officer Sandoval's conduct, plaintiff was deprived of rights, privileges and immunities secured to him by the Constitution of the United States and laws enacted thereunder.

46.     At all relevant times, the City of Chicago and the Chicago Police Department wrongly maintained, operated, condoned, and/or permitted a number of illegal and/or unconstitutional policies and practices, that facilitated the conduct at issue in this count, including:

a.  As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.  As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff;

c.  Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.  City policymakers were deliberately indifferent to the series of bad acts by Chicago Police Officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and

yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of Officers Serrano and Sandoval;

e. City policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in case;

f. During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers engaged in wrongful conduct;

g. Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

h. The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

i. The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-

paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

j.  The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to concealing and/or suppressing officer misconduct, including the code of silence.  The concealment and suppression of the existence of misconduct includes, but is not limited to:  failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers, failure to initiate prompt disciplinary procedures related to alleged misconduct; and,

k.  The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by officers against civilians that encouraged Officers Serrano and Sandoval to believe that they could deprive plaintiff of his Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

47.     As a direct and proximate result of the City of Chicago and Officers Sandoval and Serrano intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career and reputation, pain, suffering, humiliation and severe emotional

distress and has been deprived of certain rights and privileges as a citizen of the United States, all in violation of 42 U.S.C. §1983.

WHEREFORE, plaintiff Williams prays that the Court enter judgment in his favor and against defendants City of Chicago, Officer Serrano and Officer Sandoval, awarding compensatory damages and attorneys' fees, along with punitive damages against the individual officers, and any other relief this Court deems appropriate.

## COUNT III – 42 U.S.C. §1983

### UNLAWFUL SEARCH AND SEIZURE – *MONELL* CLAIM
### (City of Chicago and Unknown Chicago Police Officers)

48.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

49.    As described above, Unknown Chicago Police Officers, acting under color of law, conducted several unconstitutional searches and seizures of plaintiff by restricting access to his hospital room, taking gunshot residue tests without a warrant, attempting to acquire a blood sample without a warrant, removing and retaining custody of plaintiff's personal possessions without a warrant, and restricting access to plaintiff's cellular telephone number without a warrant, thus violating plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

50.    The misconduct was undertaken with malice, willfulness, and reckless disregard and indifference to the rights of plaintiff.

51.    The misconduct was caused and participated in by the Unknown Officers' supervisors in that they failed to adequately train and supervise the Unknown Officers.

52.     The City of Chicago and the Chicago Police Department wrongly maintained, operated, condoned, and/or permitted a number of illegal and/or unconstitutional policies and practices, that facilitated the conduct at issue in this Count, including:

a.  As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.  As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff;

c.  Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.  City policymakers were deliberately indifferent to the series of bad acts by Chicago Police Officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and

yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of Officers Serrano and Sandoval;

e. City policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in case;

f. During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers engaged in wrongful conduct;

g. Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

h. The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

i. The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-

paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

j.    The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to concealing and/or suppressing officer misconduct, including the code of silence. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers, failure to initiate prompt disciplinary procedures related to alleged misconduct; and,

k.    The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by officers against civilians that encouraged Officers Serrano and Sandoval to believe that they could deprive plaintiff of his Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

53.    As a direct and proximate result of the City of Chicago and the Unknown Chicago Police Officers intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career and reputation, pain suffering, and humiliation and severe emotional

distress and has been deprived of certain rights and privileges as a citizen of the United States.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against City of Chicago and the Unknown Chicago Police Officers, awarding compensatory damages and attorneys' fees, along with punitive damages against the individual officers, and any other relief this Court deem appropriate.

## COUNT IV – 42 U.S.C. §1983

### CIVIL CONSPIRACY
### (Officer Defendants and Unknown Chicago Police Officers)

54.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

55.    The officer defendants and Unknown Chicago Police Officers, acting under color of law, conspired to cover up and conceal the officer defendants' guilt related to the shooting.

56.    The Officer Defendants furthered the conspiracy by giving false statements regarding the incident; the Unknown Chicago Police Officers furthered the conspiracy by conducting a sham investigation and other Unknown Chicago Police Officers participated in the conspiracy by lying to plaintiff's family, keeping plaintiff's family away from plaintiff, unlawfully seizing plaintiff's personal items, restricting plaintiff's access to his cellular telephone and harassing plaintiff.

57.    The officer defendants and the Unknown Chicago Police Officers knowingly and intentionally schemed and worked together in the common plan to illegally conceal the officer defendants' use of excessive force.

58.     As a direct and proximate result of the officer defendants and the Unknown Chicago Police Officers intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career and reputation, pain suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States.

**WHEREFORE**, plaintiff prays that the Court enter judgment in his favor and against the Officer Defendants and the Unknown Chicago Police Officers, awarding compensatory damages and attorneys' fees, along with punitive damages against the individual officers, and any other relief this Court deem appropriate.

<u>**COUNT V – BATTERY**</u>
**(Officer Peterson)**

59.     Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

60.     As described in the preceding paragraphs, Officer Peterson's conduct, acting within the scope of his employment as a police officer, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing plaintiff's bodily injuries.

61.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiff's constitutional rights.

62.     The misconduct described in this Count was undertaken by Officer Peterson within the scope of his employment such that his employer, the City of Chicago, is liable for his actions.

63.     As a direct and proximate result of Officer Peterson's acts, plaintiff was injured, suffering serious bodily injuries, emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering and other damages.

WHEREFORE, plaintiff Williams respectfully requests that this Court enter judgment in his favor and against Officer Peterson, awarding compensatory damages, as well as punitive damages and any other relief this Court deems just and appropriate.

## COUNT VI – ASSAULT
### (Officer Defendants)

64.     Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

65.     As described in the preceding paragraphs, the officer defendants created a zone of danger when they improperly placed their vehicle in front of plaintiff's parked vehicle and then approached plaintiff's car, from the front, with guns drawn.

66.     The officer defendants' conduct, acting within the scope of their employment as police officers, created a reasonable apprehension in plaintiff of imminent harm and the officer defendants had the present ability to effectuate the harm.

67.     The misconduct described in this Count was undertaken with malice, willfulness, wantonness and with reckless indifference to the rights of others.

68.     As a result of the officer defendants' conduct, plaintiff had a reasonable apprehension that his life was in danger and the officer defendants' conduct was the proximate cause of some of plaintiff's emotional and other injuries.

69.    The misconduct described in this Count was undertaken by the officer defendants within the scope of their employment such that their employer, the City of Chicago, is liable for their actions.

WHEREFORE, plaintiff Williams respectfully requests that this Court enter judgment in his favor and against the officer defendants, awarding compensatory damages, as well as punitive damages and any other relief this Court deems just and appropriate.

## COUNT VII – *RESPONDEAT SUPERIOR*
### (City of Chicago)

70.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

71.    In committing the acts alleged in the preceding paragraphs, the officer defendants and the Unknown Chicago Police Officers were members of, and agents of, the Chicago Police Department, acting at all relevant times within the scope of their employment.

72.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

WHEREFORE, plaintiff respectfully requests that the Court enter judgment in his favor and against defendant City of Chicago, in an amount equal to any award against the officer defendants and the Unknown Chicago Police Officers, and any other relief this Court deems just and appropriate.

## COUNT VIII – INDEMNIFICATION
### (City of Chicago)

73.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

74.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

75.    The officer defendants and the Unknown Chicago Police Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, plaintiff respectfully requests that this Court enter judgment in their favor and against defendant City of Chicago in the amounts awarded to plaintiff against the officer defendants and Unknown Chicago Police Officers, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Date:    July 15, 2008                    Respectfully submitted,
                                          Jeremy Williams


                                          By: /s/ Sally H. Saltzberg
                                              One of their Attorneys

Sally H. Saltzberg                        Steven H. Fine
P. Michael Loftus                         53 W. Jackson Blvd, Suite 1515
Loftus & Saltzberg, P.C.                  Chicago, IL 60604
53 West Jackson, Suite 1515               (312) 922-0855
Chicago, Illinois 60604
(312) 913-2000