# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Jeremy Williams, | ) | |
| | ) | |
| Plaintiff, | ) | No.   08 C 1657 |
| | ) | |
| v. | ) | |
| Chicago Police Officer Matthew Peterson, | ) | Judge Shadur |
| Chicago Police Officer Oscar Serrano, | ) | |
| Chicago Police Officer Paul Sandoval, | ) | Magistrate Judge Mason |
| Unknown Chicago Police Officers, | ) | |
| and, the City of Chicago, a municipal | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF CHICAGO'S ANSWER AND
## JURY DEMAND TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant City of Chicago ("City"), by one of its attorneys, answers the

Plaintiff's Second Complaint and states:

### JURISDICTION AND VENUE

1.     Jurisdiction is invoked pursuant to the   Fourth   and   Fourteenth

Amendments to the Constitution of the United States, Title 42, U.S.C. §§1983 and 2000e.

Supplemental jurisdiction arises pursuant to 28 U.S.C. §§1331 and 1343(a).

ANSWER: The City denies that the U.S. Constitution provides plaintiff with a

direct cause of action.  The City admits that this Court has jurisdiction over the federal

claims of this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331.  The City

denies that supplemental jurisdiction arises pursuant to any of these statutes.

2.     Venue is proper, pursuant to 28 U.S.C.  §1391  in as  much as the

defendants reside or are located in the Northern District of Illinois and the plaintiff

resides in the Northern District of Illinois, and all of the acts and damages complained of herein occurred in the Northern District of Illinois.

ANSWER:    The City admits the allegations contained within this paragraph.

## PARTIES

3.    Plaintiff Jeremy Williams is a citizen of the United States and a resident of the State of Illinois.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph..

4.    Defendants Matthew Peterson, Oscar Serrano, Paul Sandoval and other Unknown Chicago Police Officers were, at all relevant times, employed by the City of Chicago as sworn police officers.  On information and belief, at the time of the occurrence, Officer Matthew Peterson was the son of a Chicago Police Detective Commander in Area Four.  All of the officer defendants and the other Unknown Chicago Police Officers are sued in their individual capacities.

ANSWER:    The City admits that Officers Peterson, Serrano, and Sandoval were and are employed by the City of Chicago as sworn police officers.  The City further admits that Officer Matthew Peterson was the son of a Chicago Police Detective Commander in Area Four.  Answering further, the City admits that plaintiff purports to sue Officers Peterson, Serrano, and Sandoval and the other unknown police officers in their individual capacity.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

5.    Defendant CITY OF CHICAGO is a municipal corporation of the State of Illinois and is and was, at all relevant times, the employer of the officer defendants and

the Unknown Chicago Police Officers. The City of Chicago maintains, manages and/or operates the Chicago Police Department.

ANSWER:    The City admits that the City of Chicago is a municipal corporation of the Sate of Illinois and is and was, at all relevant times, the employer of Officers Peterson, Serrano, and Sandoval.    The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.    The City of Chicago states that the allegation that it maintains, manages and/or operates the Chicago Police Department is a  vague, incomplete, and/or incorrect statement of its relationship to this entity and therefore is deemed denied.

## FACTS COMMON TO ALL COUNTS

6.    Near midnight, on December 20, 2007, plaintiff Williams was seated in the passenger seat of a parked vehicle at approximately 2900 W. Flournoy in the City of Chicago, County of Cook, State of Illinois.   Some pedestrians were standing around the vehicle talking to the plaintiff.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

7.    Without warning, an unmarked Chicago Police vehicle came to a stop in front of and  facing  plaintiff's vehicle,  blocking  in the  vehicle.  The three officer defendants quickly exited the vehicle, including an officer from the back seat of the police vehicle.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

8.    Rather than approaching plaintiff's vehicle from the rear, the officer

defendants approached the front of plaintiff's parked vehicle, with guns drawn and at the ready low position.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

9.    Immediately upon seeing the police activity, plaintiff put his hands up over his head as did the driver of the parked vehicle.    Neither plaintiff nor the driver posed any threat to the officer defendants.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

10.    Chicago Police Officer Peterson, who had exited from the back seat of the police vehicle, ran to the front of plaintiff's vehicle and immediately began shooting into the parked car, without cause.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

11.    While seated in the passenger seat of the car, plaintiff quickly sustained a bullet wound to the underside of his right forearm as his arms were up over his head.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

12.    Chicago Police Officer Peterson continued to fire into plaintiff's parked car. Plaintiff sustained a second bullet wound to the head, through the right eye and brain which exited the right side of his skull.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

13.    The driver of the vehicle, fearing for their lives, quickly put the car in reverse to get away from the bullets, but Officer Peterson continued to fire into the moving vehicle, apparently without regard for bystanders.  On information and belief, Officer Peterson fired at least six times into the vehicle.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

14.    While doubled over in the passenger seat, plaintiff was grazed by yet a third bullet.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

15.    Neither Officer Serrano nor Officer Sandoval took any steps to stop Officer Peterson from firing his service revolver into the parked vehicle.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

16.    Neither Officer Serrano nor Officer Sandoval took any steps to stop Officer Peterson from firing his service revolver into the moving vehicle.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

17.    On information and belief, before leaving the scene, the officer defendants verbally argued with each other on the street where the shooting took place.  Then, the officer defendants got into their police vehicle and set off in a different direction than plaintiff's vehicle had followed.

ANSWER:    The City is without knowledge or information sufficient to form a

5

belief as to the truth of the allegations contained in this paragraph.

18.    The officer defendants did not remain on the scene, as required by Chicago Police General Orders, following the discharge of Officer Peterson's weapon.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

19.    Plaintiff Williams received serious physical injuries but survived the attack. He endured several days in a coma as a result of the bullet he sustained to his brain. Plaintiff Williams had to undergo surgery to remove his right eye and to rebuild his facial bones and sinus cavities.  The nerve over his right eye was severed and he is now severely disfigured. He will require surgery to restore movement to his right eyelid. The bullet in his right forearm remains and has caused and will cause severe swelling and pain.  Ultimately it will have to be surgically removed.  Plaintiff Williams is also scared (sic) on his forehead, temple, arm and back.  He continues to need ongoing medical attention and will require such attention for the foreseeable future.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

20.    Despite several attempts by the Chicago Police Department to induce the Cook County State's Attorney to bring charges against plaintiff, the Cook County State's Attorney has refused all charges and, on information and belief, will not charge plaintiff with any wrongdoing arising out of the incident.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

21.    The City of Chicago has not sought charges against Officer Peterson for

discharging his weapon without justification.

ANSWER:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

22.    After the incident, several Unknown Chicago Police Officers engaged in a deliberate campaign to illegally harass plaintiff and to cover up the officer defendants' conduct by attempting to fabricate a criminal charge against plaintiff and by conducting a sham investigation of the incident.   It should be noted that the incident took place in Chicago Police Area Four where Officer Peterson's father was the Detective Division Commander.

ANSWER:     The City admits that Officer Peterson's father was the Detective Division Commander in Area Four and that plaintiff was shot in Area Four.   The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

23.    Some examples of the Unknown Chicago  Police Officers'  improper conduct includes: while plaintiff Williams lay near death in the hospital, Unknown Chicago Police officers blocked his hospital door, refusing entry to any visitors, *including* plaintiffs mother, for nearly ten hours after the shooting. Unknown Chicago Police Officers falsely told plaintiff's mother that there was a Chicago Police rule prohibiting anyone from visiting gun shot victims.

ANSWER:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

24.    Furthermore, during the time that the Unknown Chicago Police Officers forced plaintiff's mother and family to wait outside of plaintiff's hospital room, where

the family had to endure separation from plaintiff as he lay in a coma and near death, plaintiff's mother and family watched as at least six Unknown Chicago Police Officers entered and exited plaintiff's hospital room. In fact, while keeping plaintiff's mother away from her son, Unknown Chicago Police Officers administered a gunshot residue test to the unconscious plaintiff, without the benefit of a warrant and despite the fact that he was not under arrest.

ANSWER:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

25.     The Chicago Police misconduct continued as Unknown Chicago Police Officers, still keeping plaintiff's mother from his room, knowingly and with reckless disregard for the truth, falsely told plaintiff's mother that her son had been shot between the eyes, not by Officer Peterson, but by the driver of the vehicle. Unknown Chicago Police Officers also falsely told plaintiff's mother that the driver of the vehicle had shot her son and then maliciously pushed him out of the vehicle onto the street.

ANSWER:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

26.     Unknown Chicago Police Officers also lied to plaintiff's mother and family when they told them that plaintiff was under arrest and that that was why there were police guarding his hospital room and blocking anyone from entering.

ANSWER:     The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

27.     Unknown Chicago Police Officers even demanded that plaintiff's doctors draw blood from plaintiff and give it to the police, without the benefit of a warrant or

permission from the Williams family. Fortunately, the doctors refused. However, before allowing plaintiff's mother into the ICU to see her son, again without benefit of a warrant or arrest, two Unknown Chicago Police Officers removed all of plaintiff's possessions from his hospital room, including: his clothes, his underwear, his wallet, his watch, his new boots, his coat, his hat and his cellular telephone. They have not yet been returned. Weeks later, when plaintiff attempted to get another telephone utilizing his cellular number, his cellular carrier informed him that his number was not available because it was "under investigation" and could not be used again. The Chicago Police have taken plaintiff's personal possessions and phone number without justification or warrant.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

28.    On yet another occasion, within days of plaintiff's release from the hospital, but long after the Cook County State's Attorney refused to bring charges against plaintiff, Chicago Police Detectives Heerdt and Francis (not yet named as defendants), came to plaintiff's home and demanded that plaintiff leave his sick bed to speak with them. When plaintiff's mother protested and explained that plaintiff was too ill to leave his bed, the Chicago Police officers told her that they demanded to speak with him so that they could determine "what charges they would bring against him." The officers made such a statement to plaintiff and his mother, knowing that charges had already been declined.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

29.    On December 21, 2007, just one day after the shooting, ADS Ernest T.

9

Brown (not yet named as a defendant), conducted what the Chicago Police termed an initial investigation of the shooting incident. However, the report was little more than a verbatim retelling of the officer defendants' inaccurate version of the facts.   The report contained very limited police investigative work and was fraught with obvious inaccuracies, including fabrications.

ANSWER:    The City admits that ADS Ernest T. Brown wrote a six page report, dated December 21, 2007, related to the incident.   The City denies that the Chicago Police termed this report an initial investigation of the shooting incident.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph.

30.    Also as a result of the shooting, plaintiff sustained severe emotional injuries including, but not limited to: fear of additional attack, fear of retaliation by the defendants, fear of other members of the Chicago Police Department, fear of strangers, humiliation, and other emotional injuries.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph..

31.    As of today's date, the City of Chicago has not taken any action against any of the officer defendants.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

**COUNT I - 42 U.S.C. §1983**
**EXCESSIVE AND DEADLY FORCE/DUE PROCESS**
**MONELL CLAIM**
**(Officer Peterson and the City of Chicago)**

10

32.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:    The City re-states its answers to each of the foregoing paragraphs as if fully stated herein.

33.    As described in the preceding paragraphs, Officer Peterson's use of deadly force, acting under color of law and within the scope of his employment, constituted excessive force in violation of plaintiff's Constitutional rights.

ANSWER:    The City admits that Officer Peterson in his encounter with plaintiff on December 20, 2007 acted under color of law and within the scope of his employment.  The City is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained within this paragraph.

34.    At the time Officer Peterson used deadly force, there was not any threat of death or serious bodily harm to anyone but plaintiff and the driver of his vehicle.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

35.    Officer Peterson's conduct was objectively unreasonable and was undertaken intentionally, with willful indifference to plaintiff's constitutional rights.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

36.    Officer Peterson's conduct constituted the use of excessive and deadly force without cause or justification in violation of plaintiff's Fourth Amendment rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by the Fourteenth Amendment.

ANSWER:    The City is without knowledge or information sufficient to form a

11

belief as to the truth of the allegations contained in this paragraph.

37. At all relevant times, the City of Chicago and the Chicago Police Department wrongly maintained, operated, condoned, and/or permitted a number of illegal and/or unconstitutional policies and practices, that facilitated the conduct at issue in this Count, in that:

a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their use of deadly force will rarely be adequately scrutinized and, in that way, directly encouraging future abusive uses of deadly force such as those affecting plaintiff;

c. Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d. City policymakers were deliberately indifferent to the series of bad acts by Chicago Police Officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they

failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of its officers;

e.   During the relevant time, the Chicago Police Department had one or more of the following customs or policies: 1) stopping, detaining, arresting and searching civilians' without a warrant, probable cause, reasonable suspicion, consent, or other legal basis; 2) searching civilians' homes and property without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis; 3) arbitrary use of deadly and excessive force against arrestees, detainees and other civilians; 4) denial of substantive due process, abuse of legal process, malicious prosecution and filing of false charges against innocent persons; 5) assault of arrestees, detainees and other civilians; 6) preparing false and incomplete police reports to cover up police misconduct including unconstitutional searches and seizures; 7) false denial that an incident of police officer misconduct took place; 8) a code of silence in which police officers fail to report police misconduct including the type of misconduct alleged by plaintiff in this Complaint; 9) a code of silence in which police officers either remain silent or give false and misleading information during official investigations to cover up misconduct and protect themselves and other police officers; 10) failure to adequately investigate citizen complaints against police officers for the type of misconduct alleged by plaintiff in this Complaint; 11) failure to adequately discipline police officers for the type of misconduct alleged by plaintiff in this Complaint such that the City of Chicago acquiesced in a longstanding practice or custom of

13

failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred; 12) conducting inherently deficient investigations of complaints of police misconduct in which an officer receives meaningful discipline in only a minuscule percentage of cases, thereby encouraging more police misconduct; 13) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 14) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 15) a custom of failing to properly supervise officers engaged in wrongful conduct; 16) failure to adequately train and supervise police officers to rectify the malfeasance described, above;

f.    Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

g.    The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

h.    The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

ANSWER:    The City denies the allegations contained within this paragraph and each of its sub-parts.

38.    Officer Peterson's actions, as alleged in this Complaint, were done

14

pursuant to, and as a result of, one or more of the above *de facto* practices, policies and customs of the City of Chicago.

ANSWER:    The City denies that it has any of the *de facto* practices, policies and customs as alleged in paragraph 37 and its sub-parts.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

39.    The practices, policies and customs described above are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

ANSWER:    The City denies the allegations contained within this paragraph.

40.    As a direct and proximate result of the City of Chicago and Officer Peterson's intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiff has and will suffer lost wages, benefits and entitlements, damage to career and reputation, pain, suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States all in violation of 42 U.S.C. §1983.

ANSWER:    The City denies it acted in the manner alleged in paragraph 37 and its sub-parts.  The City denies any municipal conduct caused the damages alleged by plaintiff in this paragraph, and the City further denies that the City caused a deprivation of any of the plaintiff's constitutional rights as alleged within this complaint.  The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

### COUNT II - 42 U.S.C. §1983
### EXCESSIVE AND DEADLY FORCE/DUE PROCESS
### *MONELL* CLAIM
### (Officers Sandoval and Serrano and the City of Chicago)

41.   Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:    The City re-states its answers to each of the foregoing paragraphs as if fully stated herein.

42.   Officers Sandoval and Serrano, acting under color of law and within the scope of their employment, stood by and failed to intervene while Officer Peterson fired several times into plaintiff's parked vehicle.

ANSWER:    The City admits that Officers Sandoval and Serrano in their encounter with plaintiff on December 20, 2007 acted under color of law and within the scope of their employment.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph.

43.   Officers Sandoval and Serrano, acting under color of law and within the scope of their employment, stood by and failed to intervene while Officer Peterson fired several more times into plaintiff's moving vehicle.

ANSWER:    The City admits that Officers Sandoval and Serrano in their encounter with plaintiff on December 20, 2007 acted under color of law and within the scope of their employment.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph.

44.   Officers Sandoval and Serrano were present for the physical abuse of plaintiff, had a duty to act and each had the opportunity, but failed to intervene, to prevent the abuse.

16

ANSWER:The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

45.    By reason of Officer Serrano and Officer Sandoval's conduct, plaintiff was deprived of rights, privileges and immunities secured to him by the Constitution of the United States and laws enacted thereunder.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

46.  At all relevant times, the City of Chicago and the Chicago Police Department wrongly maintained, operated, condoned, and/or permitted a number of illegal and/or unconstitutional policies and practices, that facilitated the conduct at issue in this count, including:

a.    As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.    As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff;

c.    Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a

manner similar to that alleged by plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.  City policymakers were deliberately indifferent to the series of bad acts by Chicago Police O fficers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of Officers Serrano and Sandoval;

e.  City policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in case;

f.  During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers engaged in wrongful conduct;

g.  Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

h.  The City of Chicago has negotiated a contract with the police union in

18

which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

i.  The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

j.  The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to concealing and/or suppressing officer misconduct, including the code of silence. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers, failure to initiate prompt disciplinary procedures related to alleged misconduct; and,

k.  The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by officers against civilians that encouraged Officers Serrano and Sandoval to believe that they could deprive plaintiff of his Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

ANSWER:    The City denies the allegations contained within this paragraph and each of its sub-parts.

19

47.   As a direct and proximate result of the City of Chicago and Officers Sandoval and Serrano intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career and reputation, pain, suffering, humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States, all in violation of 42 U.S.C. §1983.

ANSWER:     The City denies it acted in the manner alleged in paragraph 40 and its sub-parts.   The City denies any municipal conduct caused the damages alleged by plaintiff in this paragraph, and the City further denies that the City caused a deprivation of any of the plaintiff's constitutional rights as alleged within this complaint.   The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

### COUNT III - 42 U.S.C. §1983
### UNLAWFUL SEARCH AND SEIZURE - *MONELL* CLAIM
### (City of Chicago and Unknown Chicago Police Officers)

48.   Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:     The City re-states its answers to each of the foregoing paragraphs as if fully stated herein.

49.   As described above, Unknown Chicago Police Officers, acting under color of law, conducted several unconstitutional searches and seizures of plaintiff by restricting access to his hospital room, taking gunshot residue tests without a warrant, attempting to acquire a blood sample without a warrant, removing and retaining custody of plaintiff's personal possessions without a warrant, and restricting access to plaintiffs cellular telephone number without a warrant, thus violating plaintiffs rights under the Fourth and

20

Fourteenth Amendments to the United States Constitution.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

50.    The misconduct was undertaken with malice, willfulness, and reckless disregard and indifference to the rights of plaintiff.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

51.    The misconduct was caused and participated in by the Unknown Officers' supervisors in that they failed to adequately train and supervise the Unknown Officers.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph..

52.    The City of Chicago and the Chicago Police Department wrongly maintained, operated, condoned, and/or permitted a number of illegal and/or unconstitutional policies and practices, that facilitated the conduct at issue in this Count, including:

a.    As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.    As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar

21

misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff;

c.   Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.   City policymakers were deliberately indifferent to the series of bad acts by Chicago Police Officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of Officers Serrano and Sandoval;

e.   City policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in case;

f.   During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers

22

engaged in wrongful conduct;

g.  Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

h.  The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

i.  The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

j.  The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to concealing and/or suppressing officer misconduct, including the code of silence. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers, failure to initiate prompt disciplinary procedures related to alleged misconduct; and,

k.  The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by officers

23

against civilians that encouraged Officers Serrano and Sandoval to believe that they could deprive plaintiff of his Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

ANSWER:     The City denies the allegations contained within this paragraph and each of its sub-parts.

53.   As a direct and proximate result of the City of Chicago and the Unknown Chicago Police Officers intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career and reputation, pain suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States.

ANSWER:     The City denies it acted in the manner alleged in paragraph 52 and its sub-parts.  The City denies any municipal conduct caused the damages alleged by plaintiff in this paragraph, and the City further denies that the City caused a deprivation of any of the plaintiff's constitutional rights as alleged within this complaint.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

**COUNT IV - 42 U.S.C. §1983**
**CIVIL CONSPIRACY**
**(Officer Defendants and Unknown Chicago Police Officers)**

The City makes no answer to the allegations of this count as it was dismissed by this court on August 1, 2008.

**COUNT V-BATTERY**
**(Officer Peterson)**

59.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:    The City re-states its answers to paragraphs 1-53 as if fully stated herein.

60.    As described in the preceding paragraphs, Officer Peterson's conduct, acting within the scope of his employment as a police officer, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing plaintiffs bodily injuries.

ANSWER:    The City admits that Officer Peterson in his encounter with plaintiff on December 20, 2007 acted within the scope of his employment.  The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph.

61.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiff's constitutional rights.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

62.    The misconduct described in this Count was undertaken by Officer Peterson within the scope of his employment such that his employer, the City of Chicago, is liable for his actions.

ANSWER:    The City admits that Officer Peterson in his encounter with plaintiff on December 20, 2007 was acting within the scope of his employment.  The City states that the allegation of this paragraph that the City as the employer of Officer Peterson is liable for the misconduct described in this Count allegedly undertaken by him within the scope of his employment contains a vague, incomplete, and/or incorrect statement of the

nature of the City's liability under the doctrine of *respondeat superior* under Illinois law and therefore this allegation is deemed denied. The City is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations contained within this paragraph.

63. As a direct and proximate result of Officer Peterson's acts, plaintiff was injured, suffering serious bodily injuries, emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering and other damages.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

## COUNT VI - ASSAULT
### (Officer Defendants)

64. Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:    The City re-states its answers to paragraphs 1-53 and to paragraphs 59-63 as if fully stated herein.

65. As described in the preceding paragraphs, the officer defendants created a zone of danger when they improperly placed their vehicle in front of plaintiff's parked vehicle and then approached plaintiff's car, from the front, with guns drawn.

ANSWER:    The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

66. The officer defendants' conduct, acting within the scope of their employment as police officers, created a reasonable apprehension in plaintiff of imminent harm and the officer defendants had the present ability to effectuate the harm.

ANSWER:    The City admits that Officers Peterson, Serrano and Sandoval were

acting within the scope of their employment as police officers in their encounter with plaintiff on December 20, 2007. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph.

67. The misconduct described in this Count was undertaken with malice, willfulness, wantonness and with reckless indifference to the rights of others.

ANSWER: The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

68. As a result of the officer defendants' conduct, plaintiff had a reasonable apprehension that his life was in danger and the officer defendants' conduct was the proximate cause of some of plaintiff s emotional and other injuries.

ANSWER: The City is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

69. The misconduct described in this Count was undertaken by the officer defendants within the scope of their employment such that their employer, the City of Chicago, is liable for their actions.

ANSWER: The City admits that Officers Peterson, Serrano and Sandoval in their encounter with plaintiff on December 20, 2007 were acting within the scope of their employment. The City states that the allegation of this paragraph that the City as the employer of Officers Peterson, Serrano and Sandoval is liable for the misconduct described in this count allegedly undertaken by Officers Peterson, Serrano, and Sandoval within the scope of their employment contains a vague, incomplete, and/or incorrect statement of the nature of the City's liability under the doctrine of *respondeat superior*

27

under Illinois law and therefore this allegation is deemed denied. The City is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph.

## COUNT VII -RESPONDEAT SUPERIOR
### (City of Chicago)

70.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:    The City re-states its answers to paragraphs 1-53 and to paragraphs 59-69 as if fully stated herein.

71.    In committing the acts alleged in the preceding paragraphs, the officer defendants and the Unknown Chicago Police Officers were members of, and agents of, the Chicago Police Department, acting at all relevant times within the scope of their employment.

ANSWER:    The City admits that Officers Peterson, Serrano, and Sandoval were members of the Chicago Police Department, acting at all relevant times within the scope of their employment. The City is sufficient knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

72.    Defendant City of Chicago is liable as principal for all torts committed by its agents.

ANSWER:    The City states that the allegation of this paragraph that the City is liable as principal for all torts committed by its agents contains a vague, incomplete, or incorrect statement of the nature of the City's liability under the doctrine of *respondeat superior under* Illinois law and therefore this allegation is deemed denied.

28

## COUNT VIII - INDEMNIFICATION
### (City of Chicago)

73.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:    The City re-states its answers to paragraphs 1-53 and to paragraphs 59-72 as if fully stated herein.

74.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

ANSWER:    The City admits the allegations contained within this paragraph.

75.    The officer defendants and the Unknown Chicago Police Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

ANSWER:    The City admits that Officers Peterson, Serrano, and Sandoval are employees of the Chicago Police Department who acted within the scope of their employment in their encounter with plaintiff on December 20, 2007.  The City is without information or knowledge sufficient as to the truth of the remaining allegations contained within this paragraph.

## JURY DEMAND

Defendant City hereby demands a trial by jury.

Respectfully submitted,
MARA S. GEORGES, Corporation Counsel
City of Chicago

By:    /s/   Mary Anne Spillane
Mary Anne Spillane
Special Litigation Counsel

30 North LaSalle Street
Room 1720
Chicago, Illinois 60602
(312) 744-8371
Attorney No. 06238150