# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Jeremy Williams, | ) | |
| | ) | |
| Plaintiff, | ) | No.   08 C 1657 |
| | ) | |
| v. | ) | |
| Chicago Police Officer Matthew Peterson, | ) | Judge Shadur |
| Chicago Police Officer Oscar Serrano, | ) | |
| Chicago Police Officer Paul Sandoval, | ) | Magistrate Judge Mason |
| Unknown Chicago Police Officers, | ) | |
| and, the City of Chicago, a municipal | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS PETERSON'S, SERRANO'S, AND SANDOVAL'S ANSWER, AFFIRMATIVE DEFENSES AND JURY DEMAND TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants Matthew Peterson, Oscar Serrano, and Paul Sandoval by one of their attorneys, answers the Plaintiff's Second Complaint and states:

### JURISDICTION AND VENUE

1.    Jurisdiction is invoked pursuant to the Fourth and Fourteenth Amendments to the Constitution of the United States, Title 42, U.S.C. §§1983 and 2000e. Supplemental jurisdiction arises pursuant to 28 U.S.C. §§1331 and 1343(a).

ANSWER: Officers Peterson, Serrano, and Sandoval deny that the U.S. Constitution provides plaintiff with a direct cause of action. Officers Peterson, Serrano, and Sandoval admit that this Court has jurisdiction over the federal claims of this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331. Officers Peterson, Serrano, and Sandoval deny that supplemental jurisdiction arises pursuant to any of these statutes.

Officers Peterson, Serrano, and Sandoval deny any wrongdoing causing a violation of plaintiff's constitutional rights.

2.    Venue is proper, pursuant to 28 U.S.C. §1391 in as much as the defendants reside or are located in the Northern District of Illinois and the plaintiff resides in the Northern District of Illinois, and all of the acts and damages complained of herein occurred in the Northern District of Illinois.

ANSWER:    Officers Peterson, Serrano, and Sandoval admit the allegations contained within this paragraph.

## PARTIES

3.    Plaintiff Jeremy Williams is a citizen of the United States and a resident of the State of Illinois.

ANSWER:    Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph..

4.    Defendants Matthew Peterson, Oscar Serrano, Paul Sandoval and other Unknown Chicago Police Officers were, at all relevant times, employed by the City of Chicago as sworn police officers.  On information and belief, at the time of the occurrence, Officer Matthew Peterson was the son of a Chicago Police Detective Commander in Area Four.  All of the officer defendants and the other Unknown Chicago Police Officers are sued in their individual capacities.

ANSWER:    Officers Peterson, Serrano, and Sandoval admit that Officers Peterson, Serrano, and Sandoval were and are employed by the City of Chicago as sworn police officers.  Officers Peterson, Serrano, and Sandoval admit that Officer Matthew

Peterson was the son of a Chicago Police Detective Commander in Area Four. Officers Peterson, Serrano, and Sandoval admit that plaintiff purports to sue each of them in their individual capacities.  Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph.

5.    Defendant CITY OF CHICAGO is a municipal corporation of the State of Illinois and is and was, at all relevant times, the employer of the officer defendants and the Unknown Chicago Police Officers. The City of Chicago maintains, manages and/or operates the Chicago Police Department.

ANSWER:    Officers Peterson, Serrano, and Sandoval admit that the City of Chicago is a municipal corporation of the Sate of Illinois and is and was, at all relevant times, the employer of Officers Peterson, Serrano, and Sandoval.  Upon information and belief, Officers Peterson, Serrano, and Sandoval state that the allegation that it maintains, manages and/or operates the Chicago Police Department is a vague, incomplete, and/or incorrect statement, and therefore is deemed denied.  Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the remainig allegations contained within this paragraph.

**FACTS COMMON TO ALL COUNTS**

6.    Near midnight, on December 20, 2007, plaintiff Williams was seated in the passenger seat of a parked vehicle at approximately 2900 W. Flournoy in the City of Chicago, County of Cook, State of Illinois.   Some pedestrians were standing around the vehicle talking to the plaintiff.

ANSWER:    Officers Peterson, Serrano, and Sandoval admit that a person they

3

later learned to be Jeremy Williams was seated in the passenger seat of a parked vehicle at approximately 2900 W. Flournoy in the City of Chicago, County of Cook, State of Illinois. Officers Peterson, Serrano, and Sandoval further admit that there were people standing near the vehicle. Officers Peterson, Serrano, and Sandoval deny the remaining allegations contained within this paragraph.

7.    Without warning, an unmarked Chicago Police vehicle came to a stop in front of and facing plaintiff's vehicle, blocking in the vehicle. The three officer defendants quickly exited the vehicle, including an officer from the back seat of the police vehicle.

ANSWER:    Officers Peterson, Serrano, and Sandoval admit that they were driving in an unmarked police vehicle on December 20, 2007, that it came to a stop near a parked vehicle, and attempted to block in the vehicle identified as a car where shots had been fired just previously to their attempt to stop this vehicle. Officers Peterson, Serrano, and Sandoval further admit they quickly exited the vehicle, including an officer from the back seat of the police vehicle. Officers Peterson, Serrano, and Sandoval deny the remaining allegations within this paragraph.

8.    Rather than approaching plaintiff's vehicle from the rear, the officer defendants approached the front of plaintiff's parked vehicle, with guns drawn and at the ready low position.

ANSWER:    Officers Peterson and Sandoval admit they approached the vehicle towards the front of plaintiff's parked vehicle, with guns drawn and at the ready low position due to the nature of the call (shots fired). Officer Serrano admits that he had his gun drawn and at the ready low position, due to the nature of the call (shots fired).

4

Officers Peterson, Serrano, and Sandoval deny the remaining allegations contained within this paragraph.

9.      Immediately upon seeing the police activity, plaintiff put his hands up over his head as did the driver of the parked vehicle.   Neither plaintiff nor the driver posed any threat to the officer defendants.

ANSWER:    Officers Peterson, Serrano, and Sandoval deny the allegations contained within this paragraph.

10.     Chicago Police Officer Peterson, who had exited from the back seat of the police vehicle, ran to the front of plaintiff's vehicle and immediately began shooting into the parked car, without cause.

ANSWER:    Officers Peterson and Serrano, and Sandoval admit that Officer Peterson exited quickly from the back seat of the police vehicle and Officer Peterson approached the side front of plaintiff's vehicle.  Officers Peterson and Serrano admit that Officer Peterson saw a gun pointed at Officer Sandoval.  Officer Peterson states that because he feared for the safety of his partner and the safety of others he fired his weapon.    Upon information and belief, Officer Sandoval admits that Officers Peterson and Serrano saw a gun pointed at Officer Sandoval.  Officer Peterson admits that because he feared for the safety of his partner and the safety of others he fired his weapon.  Officers Peterson and Serrano deny the remaining allegations contained within this paragraph.    Upon information and belief, Officer Sandoval deny the remaining allegations contained within this paragraph.

11.     While seated in the passenger seat of the car, plaintiff quickly sustained a bullet wound to the underside of his right forearm as his arms were up over his head.

ANSWER:    Officers Peterson, Serrano, and Sandoval are without information or knowledge sufficient to form a belief as to the truth of the allegations contained within this paragraph.

12.    Chicago Police Officer Peterson continued to fire into plaintiff's parked car. Plaintiff sustained a second bullet wound to the head, through the right eye and brain which exited the right side of his skull.

ANSWER:    Officers Peterson, Serrano, and Sandoval admit that Officer Peterson fired his weapon and that he fired his gun more than one time due to the ongoing and immediate threat to the safety of Officer Sandoval, Officer Serrano, himself, and to the safety of others within the vicinity of the parked vehicle.    Officers Peterson, Serrano, and Sandoval are without sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained within this paragraph.

13.    The driver of the vehicle, fearing for their lives, quickly put the car in reverse to get away from the bullets, but Officer Peterson continued to fire into the moving vehicle, apparently without regard for bystanders.    On information and belief, Officer Peterson fired at least six times into the vehicle.

ANSWER:    Officers Peterson, Serrano, and Sandoval admit that Officer Peterson fired his weapon more than one time and that he fired his weapon due to the ongoing and immediate threat to the safety of Officer Sandoval, Officer Serrano, himself, and to the safety of others within the vicinity of the vehicle.    Officers Peterson, Serrano, and Sandoval deny the remaining allegations contained within this paragraph.

14.    While doubled over in the passenger seat, plaintiff was grazed by yet a third bullet.

6

ANSWER:    Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

15.    Neither Officer Serrano nor Officer Sandoval took any steps to stop Officer Peterson from firing his service revolver into the parked vehicle.

ANSWER:    Officers Serrano and Sandoval admit that they did not take any steps to stop Officer Peterson from firing his service revolver because Officers Serrano and Sandoval did not have a duty to intervene because of the immediate threat of deadly force the occupants of the vehicle posed.  Upon information and belief, Officer Peterson admits that Officers Serrano and Sandoval did not take any steps to stop Officer Peterson because Officers Serrano and Sandoval did not have a duty to intervene because of the immediate threat of deadly force from the occupants of the vehicle against the officers and others within the vicinity of the vehicle.

16.    Neither Officer Serrano nor Officer Sandoval took any steps to stop Officer Peterson from firing his service revolver into the moving vehicle.

ANSWER:    Officers Serrano and Sandoval admit that they did not take any steps to stop Officer Peterson from firing his service revolver because Officers Serrano and Sandoval did not have a duty to intervene because of the immediate threat of deadly force the occupants of the vehicle posed.  Upon information and belief, Officer Peterson admits that Officers Serrano and Sandoval did not take any steps to stop Officer Peterson because Officers Serrano and Sandoval did not have a duty to intervene because of the immediate threat of deadly force from the occupants of the vehicle against the officers and others within the vicinity of the vehicle.

7

17. On information and belief, before leaving the scene, the officer defendants verbally argued with each other on the street where the shooting took place. Then, the officer defendants got into their police vehicle and set off in a different direction than plaintiff's vehicle had followed.

ANSWER: Officers Peterson, Serrano, and Sandoval admit they initially, for a short distance, set off in a different direction from plaintiff's vehicle, and then turned their vehicle around to go in the direction of the plaintiff's vehicle. Officers Peterson, Serrano, and Sandoval deny the remaining allegations contained within this paragraph.

18. The officer defendants did not remain on the scene, as required by Chicago Police General Orders, following the discharge of Officer Peterson's weapon.

ANSWER: Officers Peterson, Serrano, and Sandoval admit they did not remain at the initial location where the encounter occurred with plaintiff because the vehicle in which plaintiff traveled left the scene and thus the scene of the encounter had changed. Officers Peterson, Serrano, and Sandoval deny the remaining allegations contained within this paragraph.

19. Plaintiff Williams received serious physical injuries but survived the attack. He endured several days in a coma as a result of the bullet he sustained to his brain. Plaintiff Williams had to undergo surgery to remove his right eye and to rebuild his facial bones and sinus cavities. The nerve over his right eye was severed and he is now severely disfigured. He will require surgery to restore movement to his right eyelid. The bullet in his right forearm remains and has caused and will cause severe swelling and pain. Ultimately it will have to be surgically removed. Plaintiff Williams is also scared on his forehead, temple, arm and back. He continues to need ongoing medical attention

and will require such attention for the foreseeable future.

ANSWER:    Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph.

20.    Despite several attempts by the Chicago Police Department to induce the Cook County State's Attorney to bring charges against plaintiff, the Cook County State's Attorney has refused all charges and, on information and belief, will not charge plaintiff with any wrongdoing arising out of the incident.

ANSWER:    Upon information and belief, Officers Peterson, Serrano, and Sandoval admit that plaintiff was not charged with any crime arising out of the incident. Officers Peterson, Serrano, and Sandoval deny the remaining allegations contained within this paragraph.

21.    The City of Chicago has not sought charges against Officer Peterson for discharging his weapon without justification.

ANSWER:    Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

22.    After the incident, several Unknown Chicago Police Officers engaged in a deliberate campaign to illegally harass plaintiff and to cover up the officer defendants' conduct by attempting to fabricate a criminal charge against plaintiff and by conducting a sham hvestigation of the incident.  It should be noted that the incident took place in Chicago Police Area Four where Officer Peterson's father was the Detective Division Commander.

9

ANSWER:    Officers Peterson, Serrano, and Sandoval admit that Officer Peterson's father was the Detective Division Commander in Area Four.    Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to truth of the remaining allegations contained within this paragraph.

23.    Some examples of the Unknown Chicago Police Officers' improper conduct includes: while plaintiff Williams lay near death in the hospital, Unknown Chicago Police officers blocked his hospital door, refusing entry to any visitors, *including* plaintiffs mother, for nearly ten hours after the shooting. Unknown Chicago Police Officers falsely told plaintiff's mother that there was a Chicago Police rule prohibiting anyone from visiting gun shot victims.

ANSWER:    Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

24.    Furthermore, during the time that the Unknown Chicago Police Officers forced plaintiff's mother and family to wait outside of plaintiff's hospital room, where the family had to endure separation from plaintiff as he lay in a coma and near death, plaintiff's mother and family watched as at least six Unknown Chicago Police Officers entered and exited plaintiff's hospital room.  In fact, while keeping plaintiff's mother away from her son, Unknown Chicago Police Officers administered a gunshot residue test to the unconscious plaintiff, without the benefit of a warrant and despite the fact that he was not under arrest.

ANSWER:    Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained

within this paragraph.

25. The Chicago Police misconduct continued as Unknown Chicago Police Officers, still keeping plaintiff's mother from his room, knowingly and with reckless disregard for the truth, falsely told plaintiff's mother that her son had been shot between the eyes, not by Officer Peterson, but by the driver of the vehicle. Unknown Chicago Police Officers also falsely told plaintiff's mother that the driver of the vehicle had shot her son and then maliciously pushed him out of the vehicle onto the street.

ANSWER: Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

26. Unknown Chicago Police Officers also lied to plaintiff's mother and family when they told them that plaintiff was under arrest and that that was why there were police guarding his hospital room and blocking anyone from entering.

ANSWER: Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

27. Unknown Chicago Police Officers even demanded that plaintiff's doctors draw blood from plaintiff and give it to the police, without the benefit of a warrant or permission from the Williams family. Fortunately, the doctors refused. However, before allowing plaintiff's mother into the ICU to see her son, again without benefit of a warrant or arrest, two Unknown Chicago Police Officers removed all of plaintiff's possessions from his hospital room, including: his clothes, his underwear, his wallet, his watch, his new boots, his coat, his hat and his cellular telephone. They have not yet been returned.

Weeks later, when plaintiff attempted to get another telephone utilizing his cellular number, his cellular carrier informed him that his number was not available because it was "under investigation" and could not be used again.  The Chicago Police have taken plaintiff's personal possessions and phone number without justification or warrant.

ANSWER:     Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

28.   On yet another occasion, within days of plaintiff's release from the hospital, but long after the Cook County State's Attorney refused to bring charges against plaintiff, Chicago Police Detectives Heerdt and Francis (not yet named as defendants), came to plaintiff's home and demanded that plaintiff leave his sick bed to speak with them.  When plaintiff's mother protested and explained that plaintiff was too ill to leave his bed, the Chicago Police officers told her that they demanded to speak with him so that they could determine "what charges they would bring against him." The officers made such a statement to plaintiff and his mother, knowing that charges had already been declined.

ANSWER:     Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

29.   On December 21, 2007, just one day after the shooting, ADS Ernest T. Brown (not yet named as a defendant), conducted what the Chicago Police termed an initial investigation of the shooting incident. However, the report was little more than a verbatim retelling of the officer defendants' inaccurate version of the facts.   The report

contained very limited police investigative work and was fraught with obvious inaccuracies, including fabrications.

ANSWER:    Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

30.    Also as a result of the shooting, plaintiff sustained severe emotional injuries including, but not limited to: fear of additional attack, fear of retaliation by the defendants, fear of other members of the Chicago Police Department, fear of strangers, humiliation, and other emotional injuries.

ANSWER:    Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

31.    As of today's date, the City of Chicago has not taken any action against any of the officer defendants.

ANSWER:    Officers Peterson, Serrano, and Sandoval are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph.

## COUNT I - 42 U.S.C. §1983
### EXCESSIVE AND DEADLY FORCE/DUE PROCESS
### MONELL CLAIM
### (Officer Peterson and the City of Chicago)

32.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:    Officers Peterson, Serrano[1], and Sandoval re-state their answers to each of the foregoing paragraphs as if fully stated herein.

33.    As described in the preceding paragraphs, Officer Peterson's use of deadly force, acting under color of law and within the scope of his employment, constituted excessive force in violation of plaintiff's Constitutional rights.

ANSWER:    Officer Peterson admits that during his encounter with plaintiff on December 20, 2007, he acted under color of law, within the scope of his employment and that he used deadly force to protect the life and safety of others, including Officers Sandoval, Serrano, and himself.    Officer Peterson denies the remaining allegations contained within this paragraph.

34.    At the time Officer Peterson used deadly force, there was not any threat of death or serious bodily harm to anyone but plaintiff and the driver of his vehicle.

ANSWER:    Officer Peterson admits he used deadly force because there was an immediate and ongoing threat of death or serious bodily harm to Officers Sandoval, Serrano and to others, including himself.    Officer Peterson denies the remaining allegations contained within this paragraph.

35.    Officer Peterson's conduct was objectively unreasonable and was undertaken intentionally, with willful indifference to plaintiffs constitutional rights.

ANSWER:    Officer Peterson denies the allegations contained within this paragraph.

36.    Officer Peterson's conduct constituted the use of excessive and deadly force

---

[1]    Officers Serrano and Sandoval make no answer to the remaining allegations within Count I as it is not directed towards them.

14

without cause or justification in violation of plaintiff's Fourth Amendment rights as incorporated by the Fourteenth Amendment and/or his equal protection rights guaranteed by the Fourteenth Amendment.

ANSWER:    Officer Peterson denies the allegations contained within this paragraph.

37.  At all relevant times, the City of Chicago and the Chicago Police Department wrongly maintained, operated, condoned, and/or permitted a number of illegal and/or unconstitutional policies and practices, that facilitated the conduct at issue in this Count, in that:

a.  As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.  As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their use of deadly force will rarely be adequately scrutinized and, in that way, directly encouraging future abusive uses of deadly force such as those affecting plaintiff;

c.  Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a

disproportionately small number of cases;

d.   City policymakers were deliberately indifferent to the series of bad acts by Chicago Police Officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of its officers;

e.   During the relevant time, the Chicago Police Department had one or more of the following customs or policies: 1) stopping, detaining, arresting and searching civilians' without a warrant, probable cause, reasonable suspicion, consent, or other legal basis; 2) searching civilians' homes and property without a warrant, probable cause, reasonable suspicion, consent, or any other legal basis; 3) arbitrary use of deadly and excessive force against arrestees, detainees and other civilians; 4) denial of substantive due process, abuse of legal process, malicious prosecution and filing of false charges against innocent persons; 5) assault of arrestees, detainees and other civilians; 6) preparing false and incomplete police reports to cover up police misconduct including unconstitutional searches and seizures; 7) false denial that an incident of police officer misconduct took place; 8) a code of silence in which police officers fail to report police misconduct including the type of misconduct alleged by plaintiff in this Complaint; 9) a code of silence in which police officers either remain silent or give false and misleading information during official investigations to cover up misconduct and protect themselves and other police officers; 10) failure to adequately investigate

16

citizen complaints against police officers for the type of misconduct alleged by plaintiff in this Complaint; 11) failure to adequately discipline police officers for the type of misconduct alleged by plaintiff in this Complaint such that the City of Chicago acquiesced in a longstanding practice or custom of failing to discipline officers engaged in illegal conduct from which the unconstitutional code of silence can be inferred; 12) conducting inherently deficient investigations of complaints of police misconduct in which an officer receives meaningful discipline in only a minuscule percentage of cases, thereby encouraging more police misconduct; 13) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 14) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 15) a custom of failing to properly supervise officers engaged in wrongful conduct; 16) failure to adequately train and supervise police officers to rectify the malfeasance described, above;

f.    Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

g.    The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

h.    The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs,

thereby tacitly approving and ratifying the type of misconduct alleged here;

ANSWER:    Officer Peterson denies the allegations contained within this paragraph and each of its sub-parts.

38.    Officer Peterson's    actions,    as    alleged in this    Complaint, were done pursuant to, and as a result of, one or more of the above *de facto* practices, policies and customs of the City of Chicago.

ANSWER:    Officer Peterson denies the allegations contained within this paragraph.

39.    The practices, policies and customs described above are widespread, permanent and well-settled and were known, or should have been known, to the municipal policy-makers of the City of Chicago.

ANSWER:    Officer Peterson denies the allegations contained within this paragraph.

40.    As a direct and proximate result of the City of Chicago and Officer Peterson's intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiff has and will suffer lost wages, benefits and entitlements, damage to career and reputation, pain, suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States all in violation of 42 U.S.C. §1983.

ANSWER:    Officer Peterson denies the allegations contained with this complaint.

**COUNT II - 42 U.S.C. §1983**
**EXCESSIVE AND DEADLY FORCE/DUE PROCESS**
***MONELL* CLAIM**

18

**(Officers Sandoval and Serrano and the City of Chicago)**

41.   Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:    Officers Peterson[2], Serrano, and Sandoval re-state their answers to each of the foregoing paragraphs as if fully stated herein.

42.   Officers Sandoval and Serrano, acting under color of law and within the scope of their employment, stood by and failed to intervene while Officer Peterson fired several times into plaintiff's parked vehicle.

ANSWER:    Officers Sandoval and Serrano admit that in their encounter with plaintiff on December 20, 2007, they acted under color of law and within the scope of their employment.   Officers Sandoval and Serrano deny that they stood by and failed to intervene when Officer Peterson fired his weapon because Officers Serrano and Sandoval did not have a duty to intervene because of the immediate threat of deadly force the occupants of the vehicle posed to Officers Sandoval, Serrano, and Peterson and to others within the vicinity of the vehicle in which plaintiff was in at the time of the encounter. Officers Sandoval and Serrano deny the remaining allegations contained within this paragraph.

43.   Officers Sandoval and Serrano, acting under color of law and within the scope of their employment, stood by and failed to intervene while Officer Peterson fired several more times into plaintiff's moving vehicle.

ANSWER:    Officers Sandoval and Serrano admit that in their encounter with

---

[2]    Officer Peterson makes no answer to Count II as it not directed towards him. However, to the extent this paragraph alleges any wrongdoing on Officer Peterson's part, he denies any such allegation within paragraphs 42 and 43.

plaintiff on December 20, 2007, they acted under color of law and within the scope of their employment.   Officers Sandoval and Serrano deny that they stood by and failed to intervene when Officer Peterson fired his weapon because Officers Serrano and Sandoval did not have a duty to intervene because of the immediate threat of deadly force the occupants of the vehicle posed to Officers Sandoval, Serrano, and Peterson and to others within the vicinity of the vehicle in which plaintiff was in at the time of the encounter. Officers Sandoval and Serrano deny the remaining allegations contained within this paragraph.

44.    Officers Sandoval and Serrano were present for the physical abuse of plaintiff, had a duty to act and each had the opportunity, but failed to intervene, to prevent the abuse.

ANSWER: Officers Sandoval and Serrano deny the allegations contained within this paragraph.

45.    By reason of Officer Serrano and Officer Sandoval's conduct, plaintiff was deprived of rights, privileges and immunities secured to him by the Constitution of the United States and laws enacted thereunder.

ANSWER: Officers Sandoval and Serrano deny the allegations contained within this paragraph.

46.  At all relevant times, the City of Chicago and the Chicago Police Department wrongly maintained, operated, condoned, and/or permitted a number of illegal and/or unconstitutional policies and practices, that facilitated the conduct at issue in this count, including:

a.    As a matter of both policy and practice, the Chicago Police Department

directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference;

b.   As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff;

c.   Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.   City policymakers were deliberately indifferent to the series of bad acts by Chicago Police O fficers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of Officers Serrano and Sandoval;

e.   City policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in case;

21

f.    During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers engaged in wrongful conduct;

g.    Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

h.    The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

i.    The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

j.    The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to concealing and/or suppressing officer misconduct, including the code of silence. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record

witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers, failure to initiate prompt disciplinary procedures related to alleged misconduct; and,

k.   The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by officers against civilians that encouraged Officers Serrano and Sandoval to believe that they could deprive plaintiff of his Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

ANSWER: Officers Sandoval and Serrano deny the allegations contained within this paragraph and its sub-parts.

47.   As a direct and proximate result of the City of Chicago and Officers Sandoval and Serrano intentionally, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career and reputation, pain, suffering, humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States, all in violation of 42 U.S.C. §1983.

ANSWER: Officers Sandoval and Serrano deny the allegations contained within this paragraph.

### COUNT III - 42 U.S.C. §1983
### UNLAWFUL SEARCH AND SEIZURE - *MONELL* CLAIM
### (City of Chicago and Unknown Chicago Police Officers)

48.   Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:　　Officers Peterson, Serrano, and Sandoval[3] re-state their answers to each of the foregoing paragraphs as if fully stated herein.

49.　　As described above, Unknown Chicago Police Officers, acting under color of law, conducted several unconstitutional searches and seizures of plaintiff by restricting access to his hospital room, taking gunshot residue tests without a warrant, attempting to acquire a blood sample without a warrant, removing and retaining custody of plaintiff's personal possessions without a warrant, and restricting access to plaintiffs cellular telephone number without a warrant, thus violating plaintiffs rights under the Fourth and Fourteenth Amendments to the United States Constitution.

50.　　The misconduct was undertaken with malice, willfulness, and reckless disregard and indifference to the rights of plaintiff.

51.　　The misconduct was caused and participated in by the Unknown Officers' supervisors in that they failed to adequately train and supervise the Unknown Officers.

52.　　The City of Chicago and the Chicago Police Department wrongly maintained, operated, condoned, and/or permitted a number of illegal and/or unconstitutional policies and practices, that facilitated the conduct at issue in this Count, including:

a.　　As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of conduct at issue here by failing to adequately train, supervise and control

---

[3] To the extent this complaint is cumulative, Officers Peterson and Serrano re-state their previous answers. As this count is not directed towards Officers Peterson, Serrano, and Sandoval, these officers make no further answer to the allegations contained within paragraphs 49-52.

its officers, such that its failure to do so manifests deliberate indifference;

b.    As a matter of both policy and practice, the Chicago Police Department facilitates the very type of conduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe that their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting plaintiff;

c.    Generally, as a matter of widespread practice, so prevalent as to comprise municipal policy, Chicago Police Department officers abuse citizens in a manner similar to that alleged by plaintiff in this Count, yet the Chicago Police Department makes findings of wrongdoing only in a disproportionately small number of cases;

d.    City policymakers were deliberately indifferent to the series of bad acts by Chicago Police Officers from which it can be inferred that the City policymakers were bound to have noticed what was going on and yet they failed to act, thereby encouraging or at least condoning (in either event, adopting) the misconduct of Officers Serrano and Sandoval;

e.    City policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department, by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in case;

f.    During the relevant time, the Chicago Police Department had one or more of the following: 1) a custom of chastising officers who violate the code of

silence; or 2) a custom of failing to train police officers to not retaliate against officers who violate the code of silence; 3) a custom of not disciplining police officers who retaliate against officers who violate the code of silence; or 4) a custom of failing to properly supervise officers engaged in wrongful conduct;

g.   Despite general orders prohibiting police officer misconduct, the former Superintendent of the Chicago Police Department has testified, under oath, that CPD's general orders are merely guidelines;

h.   The City of Chicago has negotiated a contract with the police union in which the City has agreed not to check discipline histories while conducting internal affairs investigations of officers suspected of misconduct;

i.   The City of Chicago and the relevant policymakers have failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, thereby tacitly approving and ratifying the type of misconduct alleged here;

j.   The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to concealing and/or suppressing officer misconduct, including the code of silence. The concealment and suppression of the existence of misconduct includes, but is not limited to: failure to sufficiently investigate allegations of misconduct, failure to accept complaints from citizens against police officers; failure to promptly record witness statements or preserve evidence, failure to promptly interview suspect officers, failure to properly and sufficiently discipline officers,

26

failure to initiate prompt disciplinary procedures related to alleged misconduct; and,

k.    The City of Chicago developed and maintained this widespread *de facto* policy and custom with regard to acts of illegality committed by officers against civilians that encouraged Officers Serrano and Sandoval to believe that they could deprive plaintiff of his Constitutional rights with impunity and with the explicit or tacit approval of the City of Chicago.

53.    As a direct and proximate result of the City of Chicago and the Unknown Chicago Police Officers intentional, knowingly, unlawfully and unconscionably acting in the manner aforesaid, plaintiff has and will suffer lost wages, benefits and entitlements, damage to his career and reputation, pain suffering, and humiliation and severe emotional distress and has been deprived of certain rights and privileges as a citizen of the United States.

### COUNT IV - 42 U.S.C. §1983
### CIVIL CONSPIRACY
**(Officer Defendants and Unknown Chicago Police Officers)**

Officers Peterson, Serrano, and Sandoval make no answer to the allegations contained within this count as it was dismissed by this court on August 1, 2008.

### COUNT V-BATTERY
**(Officer Peterson)**

59.    Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:    Officers Peterson, Serrano, and Sandoval[4] re-state their answers to

---

[4]    To the extent the complaint is cumulative, Officers Serrano and Sandoval re-state their previous answers.  As this count is not directed towards Officers Serrano and Sandoval, they make no further answer to the allegations contained within

each of the foregoing paragraphs as if fully stated herein.

60.    As described in the preceding paragraphs, Officer Peterson's conduct, acting within the scope of his employment as a police officer, constituted unjustified and offensive physical contact, undertaken willfully and wantonly, proximately causing plaintiffs bodily injuries.

ANSWER:    Officer Peterson admits that in his encounter with plaintiff on December 20, 2007 he acted under color of law and within the scope of his employment. Officer Peterson denies the remaining allegations contained within this paragraph.

61.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to plaintiff's constitutional rights.

ANSWER:    Officer Peterson denies the allegations contained within this paragraph.

62.    The misconduct described in this Count was undertaken by Officer Peterson within the scope of his employment such that his employer, the City of Chicago, is liable for his actions.

ANSWER:    Officer Peterson admits that in his encounter with plaintiff on December 20, 2007 he was acting within the scope of his employment. Officer Peterson states that the allegation of this paragraph that the City as the employer of Officer Peterson is liable for the misconduct described in this Count allegedly undertaken by him within the scope of his employment contains a vague, incomplete, or incorrect statement of the nature of the City's liability under the doctrine of *respondeat superior* under

---

paragraphs 59-63.

Illinois law and therefore this allegation is deemed denied. Officer Peterson denies the remaining allegations contained within this paragraph.

63. As a direct and proximate result of Officer Peterson's acts, plaintiff was injured, suffering serious bodily injuries, emotional anxiety, mental trauma, humiliation, fear, stress, pain and suffering and other damages.

ANSWER:     Officer Peterson denies the allegations contained within this paragraph.

## COUNT VI - ASSAULT
### (Officer Defendants)

64. Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:     Officers Peterson, Serrano, and Sandoval re-state their answers to each of the foregoing paragraphs as if fully stated herein.

65. As described in the preceding paragraphs, the officer defendants created a zone of danger when they improperly placed their vehicle in front of plaintiffs parked vehicle and then approached plaintiffs car, from the front, with guns drawn.

ANSWER:     Officers Peterson, Serrano, and Sandoval deny the allegations contained within this paragraph.

66. The officer defendants' conduct, acting within the scope of their employment as police officers, created a reasonable apprehension in plaintiff of imminent harm and the officer defendants had the present ability to effectuate the harm.

ANSWER:     Officers Peterson, Serrano, and Sandoval admit that they were acting within the scope of their employment as police officers in their encounter with plaintiff on December 20, 2007.     Officers Peterson, Serrano, and Sandoval deny the

remaining allegations contained within this paragraph.

67.    The misconduct described in this Count was undertaken with malice, willfulness, wantonness and with reckless indifference to the rights of others.

ANSWER:    Officers Peterson, Serrano, and Sandoval deny the allegations contained within this paragraph.

68.    As a result of the officer defendants' conduct, plaintiff had a reasonable apprehension that his life was in danger and the officer defendants' conduct was the proximate cause of some of plaintiff s emotional and other injuries.

ANSWER:    Officers Peterson, Serrano, and Sandoval deny the allegations contained within this paragraph.

69.    The misconduct described in this Count was undertaken by the officer defendants within the scope of their employment such that their employer, the City of Chicago, is liable for their actions.

ANSWER:    Officers Peterson, Serrano and Sandoval admit that in their encounter with plaintiff on December 20, 2007 they were acting within the scope of their employment.  Officers Peterson, Serrano, and Sandoval state that the allegation of this paragraph that the City as the employer of Officers Peterson, Serrano and Sandoval is liable for the misconduct described in this count allegedly undertaken by Officers Peterson, Serrano, and Sandoval within the scope of their employment contains a vague, incomplete, or incorrect statement of the nature of the City's liability under the doctrine of *respondeat superior* under Illinois law and therefore this allegation is deemed denied. Officers Peterson, Serrano, and Sandoval deny the remaining allegations contained within this paragraph.

30

## COUNT VII -RESPONDEAT SUPERIOR
### (City of Chicago)

70.   Plaintiff realleges each of the foregoing paragraphs as if fully stated

herein.

ANSWER:    Officers Peterson, Serrano, and Sandoval[5] re-state their answers to

each of the foregoing paragraphs as if fully stated herein.

71.   In committing the acts alleged in the preceding paragraphs, the officer

defendants and the Unknown Chicago Police Officers were members of, and agents of,

the Chicago Police Department, acting at all relevant times within the scope of their

employment.

72.    Defendant City of Chicago is liable as principal for all torts committed by

its agents.

## COUNT VIII - INDEMNIFICATION
### (City of Chicago)

73.   Plaintiff realleges each of the foregoing paragraphs as if fully stated herein.

ANSWER:    Officers Peterson, Serrano, and Sandoval[6] re-state their answers to

each of the foregoing paragraphs as if fully stated herein.

74.   Illinois law provides that public entities are directed to pay any tort judgment

for compensatory damages for which employees are liable within the scope of their

---

[5]    As this count is not directed towards Officers Peterson, Serrano, and Sandoval, they make no further answer to the allegations contained within paragraphs 70-72.

[6]    As this count is not directed towards Officers Peterson, Serrano, and Sandoval, they make no further answer to the allegations contained within paragraphs 70-72.

employment activities.

75.    The officer defendants and the Unknown Chicago Police Officers are or were employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

### JURY DEMAND

Officers Peterson, Serrano, and Sandoval hereby demand a trial by jury.

### AFFIRMATIVE DEFENSES

1.    As public employees, Officers Peterson, Serrano, and Sandoval are immune from liability pursuant to 745 ILCS 10/2-201 (2006).

2.    Under the Act, a public employee acting within the scope of his or her employment is not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204 (2006).

3.    Officers Peterson, Serrano, and Sandoval are government officials (police officers) who perform discretionary functions.  At all times material to the extent alleged in Plaintiff's Second Amended Complaint, a reasonable police officer objectively viewing the fact and circumstances that confronted defendants, could have believed his/her actions to be lawful, in light of clearly established law and the information defendants possessed.  Therefore they are entitled to qualified immunity as to the federal claims.

4.    An award of punitive damages would deprive Officers Peterson, Serrano, and Sandoval of due process of law in violation of the Fifth and Fourteenth Amendments to the United States Constitution where the award of punitive damages is unreasonable and disproportionate to the amount of harm to the plaintiff and to the actual damages

recovered.

5.      As to the state law claims, at the time of the incident alleged in plaintiff's amended complaint, Officers Peterson, Serrano, and Sandoval were City employees, namely police officers, who were engaged in the execution and enforcement of the law. Under the Tort Immunity Act, an employee or agent of the City is not liable for his acts or omissions in the execution or enforcement of the law, unless such act or omission constitutes wilful and wanton conduct.   745 ILCS 10/2-202 (2006).   The acts and/or omissions of Officers Peterson, Serrano, and Sandoval were not willful and wanton. Therefore, Officers Peterson, Serrano, and Sandoval are not liable to plaintiff.

6.      Under Illinois law, Officers Peterson, Serrano, and Sandoval are not liable to plaintiff because Officer Peterson's use of force in attempting to seize plaintiff were justified under 720 ILCS 5/7-5 (2006).

7.      As to the state law claims where Officers Peterson, Serrano, and Sandoval may be liable in damages, the total amount of damages to which plaintiff would otherwise be entitled must be reduced by application of principles of comparative fault in proportion to the amount of willful and wanton, reckless and/or intentional conduct of the plaintiff's decedent which was the proximate cause of plaintiff's injuries.

Respectfully submitted,
MARA S. GEORGES, Corporation Counsel
City of Chicago


By:      /s/   Mary Anne Spillane
         Mary Anne Spillane
         Special Litigation Counsel

30 North LaSalle Street
Room 1720
Chicago, Illinois 60602
(312) 744-8371
Attorney No. 06238150